UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANN T. NGUYEN,<br><br>           Plaintiff,<br><br>     v.<br><br>HONEYWELL ELECTRONIC MATERIALS, INC.,<br><br>           Defendant. | NO. CV-04-0284-EFS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

BEFORE THE COURT, without oral argument,[1] is Defendant Honeywell Electronic Materials, Inc.'s Motion for Summary Judgment (Ct. Rec. 25.) After reviewing the submitted materials and relevant authority, the Court is fully informed and hereby grants Defendant's Motion for Summary Judgment and dismisses this action.

### I. Plaintiff's Failure to Respond

Because Plaintiff has proceeded as a *pro se* litigant since September 2, 2005, when the Court permitted her former attorney, Fred O. Montoya, to withdraw for reasons of health, the Court examines the record to

---

[1] On March 13, 2006, pursuant to Local Rule 7.1(h)(3) and due to the lack of briefing by Plaintiff, the Court determined oral argument was unnecessary. (Ct. Rec. 36.)

ORDER ~ 1

determine whether it would be unfair to consider Defendant's Motion for Summary Judgement.

**A. Background**

On August 9, 2004, Mr. Montoya commenced this action on behalf of Plaintiff by filing a Complaint for Damages against Defendant. (Ct. Rec. 1.) Plaintiff's Complaint for Damages was answered by Defendant on October 8, 2004, (Ct. Rec. 5.) and a Scheduling Order was entered on December 13, 2004 (Ct. Rec. 17). The Scheduling Order set a discovery cutoff of January 6, 2006, and trial for April 17, 2006.

On July 26, 2005, Mr. Montoya filed a Motion and Declaration Requesting an Order Granting Him Permission to Withdraw as Attorney for Plaintiff ("Motion to Withdraw"). (Ct. Rec. 18.) In his motion, Mr. Montoya explained he had been diagnosed with an illness and had decided to retire from the practice of law. *Id.* ¶¶ 4 & 5. In his declaration, Mr. Montoya also reported he had informed Plaintiff several months earlier of his plan to retire and provided her with several options for representation. *Id.* ¶ 6. According to Mr. Montoya, Plaintiff selected the Center for Justice and he followed up with the necessary referral. *Id.* Mr. Montoya then explained how the Center for Justice had agreed to represent Plaintiff, but that Plaintiff had decided to not proceed with the Center for Justice's representation. *Id.* ¶¶ 7 & 9.

Mr. Montoya then asked the Court for permission to withdraw as Plaintiff's counsel in this matter despite Plaintiff's apparent lack of future representation. *Id.* ¶ 12. Mr. Montoya mailed a copy of his Motion to Withdraw to Plaintiff on July 26, 2005. *Id.* at 3. On September 2, 2005, based on Mr. Montoya's concerns with his health and in light of


Plaintiff's failure to object to his request, Mr. Montoya's Motion to Withdraw was granted. (Ct. Rec. 23.)  Since September 2, 2005, Plaintiff has proceeded *pro se*.

On September 30, 2005, Defendant served its First Set of Requests for Admission on Plaintiff by mailing copies of the requests to Plaintiff's two known addresses. (Ct. Rec. 29 ¶ 6.)  As of January 20, 2006, neither Plaintiff nor anyone on her behalf had responded to this or any other discovery request made by Defendant. *Id.* ¶ 7.  On January 20, 2006, Defendant filed its Motion for Summary Judgment and accompanying materials. (Ct. Recs. 25-29.)  Pursuant to the Court's Scheduling Order, which allows the non-moving party twenty-one days to respond, Plaintiff's response was due no later than February 10, 2006. (*See* Ct. Rec. 17 ¶ 6.)  As of the date of the filing on this Order, Plaintiff has failed to file a memorandum in response to Defendant's Motion for Summary Judgment.  In fact, since the date Mr. Montoya was granted leave to withdraw as counsel, nothing has been filed in this case by or on Plaintiff's behalf.

In addition to the procedural history of *this* case, the Court notes that Plaintiff filed a near identical suit against Defendant in the Superior Court for Spokane County on October 27, 2003, and that Plaintiff voluntarily dismissed that suit on June 10, 2004, after failing to meet the witness disclosure deadline (May 10, 2004) set by the state court in its January 20, 2004, scheduling order. (Ct. Rec. 29 ¶¶ 2-4.)

**B. Decision to Proceed**

From the record before the Court, it appears on the basis of the undisputed assertions in Defendant's supporting declarations (Ct. Recs.

ORDER ~ 3

28 & 29) and the procedural history of this case that Plaintiff understood her failure to respond to Defendant's Motion for Summary Judgment could result in a dismissal of her action. This is a fair inference from two undisputed, and indeed undisputable, facts: (1) Plaintiff had previously dismissed her state court action, which involved the same issues raised in this suit, when a scheduling order deadline requiring identification of witnesses passed without her compliance and (2) Defendant's First Set of Requests for Admission to Plaintiff contained an explicit advisory that unanswered admission requests would be "deemed admitted." (Ct. Rec. 29 Ex. B at 2.)

Furthermore, Plaintiff has known since early in the summer of 2005 of her need to obtain new counsel to replace Mr. Montoya. Despite this knowledge, Plaintiff failed to acquire new counsel. Finally, Plaintiff failed to respond or seek additional time to respond to Defendant's Motion for Summary Judgment, which explicitly explains Defendant is seeking a dismissal of this action. (Ct. Rec. 25). Based on these facts, there is no apparent reason to delay consideration of Defendant's Motion for Summary Judgment due to Plaintiff's failure to respond or obtain counsel. Accordingly, the Court now analyzes the merits of Defendant's motion.

## II. Factual Background

Plaintiff has been employed by Defendant since 1996, and worked as a plating inspector under the direct supervision of Production Supervisor Vivan Harvey since August 5, 2002. (Ct. Rec. 28 ¶¶ 3 & 4.) Throughout Plaintiff's employment with Defendant, Defendant has had a policy prohibiting sexual harassment and procedures for reporting sexual

harassment in place. *Id.* Exs. A-C. Defendant's Workplace Harassment Policy warns that employees who violate the policy will be subject to immediate disciplinary action, which includes the possibility of termination. *Id.* Ex. B. Moreover, the policy encourages any employee who believes he or she has been the victim of sexual harassment, or has witnessed or has knowledge of harassing activity occurring in the workplace, to report the violation immediately to a Honeywell supervisor, to the Human Resource Department, or through Defendant's confidential ACCESS line. *Id.* Plaintiff received training on Defendant's Code of Business Conduct and Workplace Harassment Policy on November 6, 2001, and again on September 11, 2003. *Id.* Exs. D & E.

On September 3, 2003, Plaintiff complained to Dale Woody, the lead employee on her shift, that Ricky Anderson, Plaintiff's co-worker, had made an offensive sexual gesture toward her on the previous day. *Id.* ¶ 9. Mr. Woody immediately reported Plaintiff's complaint to their supervisor, Ms. Harvey. *Id.* On September 4, 2003, in response to Plaintiff's complaint, Defendant initiated an investigation, during which Plaintiff, Plaintiff's husband (Hung Nguyen), Mr. Anderson, and Mr. Woody were each interviewed.[2] *Id.* ¶¶ 10 & 11. Due to discrepancies between the information provided by Plaintiff, Mr. Nguyen, and Mr. Anderson during their interviews, Defendant decided to re-interview the individuals

---

[2] Only Plaintiff, Mr. Nguyen (who also works for Defendant), and Mr. Anderson are claimed to have witnessed the offensive gesture, which allegedly consisted of Mr. Anderson placing a pen under his shirt, simulating masturbation with the pen, and asking Plaintiff to look at him (the "pen incident"). (Ct. Rec. 28 ¶ 10.)

ORDER ~ 5

during the following week. *Id.* ¶ 11.  Following its second round of interviews, Defendant concluded it was unable to determine whether Mr. Anderson had engaged in unwelcome harassing conduct toward Plaintiff, but did determine Mr. Anderson had violated Defendant's Code of Business Conduct by using profane language in the workplace and not fully cooperating with the investigation. *Id.* ¶ 12.

Based on its investigative findings, Defendant gave a verbal warning to Mr. Anderson on September 16, 2003, in which Defendant informed Mr. Anderson he was "expected to behave professionally while at work and [to] treat all employees with dignity and respect[.]" *Id.* Ex. E.  That same day, Defendant informed Plaintiff its investigation of her complaint was complete and that Defendant had "implemented corrective action measures to ensure Honeywell continues to provides [sic] a positive work environment." *Id.* Ex. F.  In addition, Plaintiff was encouraged to report future violations to Honeywell supervisors, the Human Resources Department, or through the confidential ACCESS line. *Id.*  Since Defendant's investigation and verbal warning to Mr. Anderson in September 2003, Plaintiff has never again complained of offensive conduct by Mr. Anderson to any Honeywell supervisor, a human resource representative, or through the confidential ACCESS line. *Id.* at 15.

Despite the above-described investigation, Plaintiff filed suit against Defendant in the Superior Court of Spokane County on October 27, 2003. (Ct. Rec. 29 Ex. A.)  In her state complaint, Plaintiff alleged Defendant was liable under the Washington Law Against Discrimination ("WLAD"), R.C.W. § 49.60 et seq., based on conduct engaged in by Mr. Anderson (1) during the September 2, 2003, pen incident, (2) prior to pen

ORDER ~ 6

1  incident, and (3) since the conclusion of Defendant's mid-September 2003
2  investigation of the pen incident. *Id.* Specifically, Plaintiff alleged
3  that prior to August 2003, Mr. Anderson had made lewd comments during
4  several telephones calls to Plaintiff's home. *Id.* In addition, Plaintiff
5  claimed that following Defendant's investigation of the pen incident, Mr.
6  Anderson had exclaimed to Plaintiff: "You make me too hot!  You're
7  driving me crazy!" *Id.* Plaintiff ultimately dismissed her state action
8  against Defendant on June 10, 2004, after she failed to disclose
9  witnesses prior to the witness disclosure deadline set by the state
10 court. *Id.* ¶ 4.

11      After Defendant learned of the new allegations contained in
12 Plaintiff's state complaint, it commenced a new investigation, during
13 which Plaintiff, Mr. Nguyen, Mr. Anderson, and numerous co-workers were
14 interviewed. (Ct. Rec. 28 ¶ 16.) During her interview, Plaintiff reported
15 that on September 29, 2003, Mr. Anderson stated to her: "You make me too
16 hot!  You're driving me crazy!" *Id.* ¶ 17. Plaintiff also reported that
17 Mr. Anderson had called her on October 28, 2003, to ask her to go
18 shopping with him. *Id.* Following a full investigation, Defendant
19 concluded Mr. Anderson had violated the Code of Business Conduct by
20 engaging in sexual comments and/or acts directed at another employee. *Id.*
21 ¶ 18. As a result, on February 2, 2004, Defendant issued Mr. Anderson
22 a Final Written Warning, which resulted in Mr. Anderson's ineligibility
23 to apply for internal posted positions for twelve months and
24 participation in Honeywell's incentive plan during the first quarter of
25 2004. *Id.* Ex. G.

26

ORDER ~ 7

Despite dismissing her state action on June 10, 2004, and the second investigation conducted by Defendant during the winter of 2003-04, Plaintiff filed the instant federal action against Defendant on August 9, 2004. (Ct. Rec. 1.)  Aside from adding a Title VII cause of action alleging a hostile work environment, Plaintiff's federal complaint is nearly identical to her previously dismissed state complaint. (Ct. Recs. 1 & 29 Ex. A.)[3]  Defendant now asks the Court to grant summary judgment in its favor with regard to Plaintiff's two causes of action and to dismiss this suit.

### III. Summary Judgment Standard

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  When considering a motion for summary judgment, a court may not weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A genuine issue for trial exists only if "the evidence is such that a reasonable jury could return a verdict" for the party opposing summary judgment. *Id*. at 248. In other words, issues of fact are not material and do not preclude summary judgment unless they "might affect the outcome of the suit under

---

[3] Plaintiff also added an allegation Mr. Anderson had called her at home to ask for a date following the pen incident investigation. (Ct. Rec. 1 ¶ 17.)

ORDER ~ 8

the governing law." *Id.*  There is no genuine issue for trial if the evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id.* at 249.

If the party requesting summary judgment demonstrates the absence of a genuine material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial" or judgment may be granted as a matter of law. *Anderson*, 477 U.S. at 248. This requires the party opposing summary judgment to present or identify in the record evidence sufficient to establish the existence of any challenged element that is essential to that party's case and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Failure to contradict the moving party's facts with counter affidavits or other responsive materials may result in the entry of summary judgment if the party requesting summary judgment is otherwise entitled to judgment as a matter of law. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

**VI. Analysis**

**A. Title VII Claim**

Under Title VII, it is an unlawful employment practice to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1).  "Sexual harassment is a species of [Title VII] gender discrimination" and "falls into two major categories: hostile work environment and *quid pro quo*." *Brooks v. City of San Mateo*, 229 F.3d 917,

ORDER ~ 9

923 (9th Cir. 2000) (citation omitted). "A hostile work environment claim involves a workplace environment atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." *Id.*

"To prove a 'hostile work environment" claim, [a] plaintiff must demonstrate [she was subjected to] conduct 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001) (citation omitted). "Where harassment by a co-worker is alleged, the employer can be held liable only where 'its own negligence is a cause of the harassment.'" *Id.* (quoting *Burlington Indus., Inc. V. Ellerth*, 524 U.S. 742, 759 (1998)). This is because "Title VII liability is direct, not derivative: An employer is responsible for its own actions or omissions, not for the co-worker's harassing conduct." *Id.* at 1191-92. Consequently, if an

> employer fails to take corrective action after learning of an employee's sexually harassing conduct, or takes inadequate action that emboldens the harasser to continue his misconduct, the employer can be deemed to have adopt[ed] the offending conduct and its results, quite as it they had been authorized affirmatively as the employer's policy. On the other hand, an employer cannot be held liable for misconduct of which it is unaware. The employer's liability, if any, runs only from the time it knew or should have known about the conduct and failed to stop it.

*Id.* at 1192 (internal quotations marks and citations omitted).

Notice of "sexually harassing conduct triggers an employer's duty to take prompt corrective action that is 'reasonably calculated to end the harassment.'" *Id.* (quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864 (9th Cir. 2001)). Usually, the most significant immediate corrective action

ORDER ~ 10

> an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified. An investigation is a key step in the employer's response and can itself be a powerful factor in deterring future harassment. By opening a sexual harassment investigation, the employer puts all employees on notice that it takes such allegations seriously and will not tolerate harassment in the workplace.

*Id.* at 1193 (internal citation omitted).

In general an "employer will insulate itself from Title VII liability if it acts reasonably" and "cannot be held liable unless it reacts negligently to the harassment complaint." *Id.* at 1196 (citing *Ellerth*, 524 U.S. at 759). This is true even if the employer's investigation reaches "a mistaken conclusion as to whether the accused employee actually committed harassment." *Id.* (citation omitted).

Defendant moves the Court for summary judgment on two grounds. First, Defendant argues it is entitled to judgment because Plaintiff is incapable of demonstrating Mr. Anderson's alleged misconduct was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive working environment. Second, even if Mr. Anderson's alleged misconduct created an actionable hostile work environment, Defendant is not liable under Title VII because it took prompt and reasonable corrective action after it learned of Plaintiff's complaints against Mr. Anderson.

**1. Defendant's Investigations & Related Conduct**

Based on the preventative, investigatory, and corrective measures taken by Defendant to protect Plaintiff from sexual harassment, the Court concludes Defendant did not act negligently and cannot be held liable under Title VII for Mr. Anderson's alleged misconduct. Accordingly, the

ORDER ~ 11

Court grants Defendant's request for summary judgment on Plaintiff's Title VII claim. The Court's ruling is based on the following:

First, prior to Mr. Anderson's alleged misconduct, Defendant adopted an anti-harassment policy and reporting procedures which were distributed and publicized to all employees, including Plaintiff. (Ct. Rec. 28 ¶¶ 5-8.) Defendant's anti-harassment policy and reporting procedures demonstrate Defendant's preemptive efforts for maintaining a harassment-free work environment.

Second, once Defendant was notified of Plaintiff's September 3, 2003, complaint against Mr. Anderson, it commenced a prompt investigation of the circumstances, in which all persons with knowledge of the situation were interviewed on two separate occasions. *Id.* ¶¶ 10 & 11. Defendant's investigation was the most significant, immediate, and reasonable measure Defendant could have taken to ensure Plaintiff's right to be free from sexual harassment in the workplace was protected. *See Swenson*, 271 F.3d at 1193.

Following its investigation, even though Defendant was unable to determine whether Mr. Anderson had sexually harassed Plaintiff, Defendant issued a verbal warning to Mr. Anderson, in which he was cautioned to comply with Defendant's Code of Business Conduct or face further action, which included the possibility of termination. (Ct. Rec. 28 Ex. E.) The Court believes this corrective action was appropriate and reasonable in light of the inconclusiveness of Defendant's investigation and the limited nature of Plaintiff's complaint, which at that time was solely limited to the pen incident. Thus, Defendant's handling of the pen incident cannot be deemed negligent, nor a cause of the alleged sexual

harassment. Consequently, Defendant may not be held liable under Title VII based on the Plaintiff's complaints regarding Mr. Anderson. *See Swenson*, 271 F.3d at 1191.

Third, Plaintiff cannot not be held liable under Title VII for Mr. Anderson's alleged misconduct occurring prior to the pen incident, i.e. Mr. Anderson's lewd telephone calls to Plaintiff's home, because it was unaware of the alleged calls until Plaintiff filed her state suit on October 27, 2004. *Id.* at 1192 ("[A]n employer cannot be held liable for misconduct of which it is unaware. The employer's liability, if any, runs only from the time it knew or should have known about the conduct and failed to stop it.") This is particularly true in light of the fact Plaintiff never reported the allegedly offensive calls to Defendant through the provided reporting channels or during the course of Defendant's investigation of the pen incident.

Similarly, Defendant may not be held liable for failing to take corrective measures with regard to Mr. Anderson's alleged misconduct occurring after the pen incident investigation, i.e. Mr. Anderson's "You make me too hot! You're driving me crazy!" comment and request for a date, because those incidents also were never reported to Defendant until Plaintiff filed her state complaint. Further, once Defendant did learn of the newly alleged misconduct, it commenced a second investigation of Mr. Anderson, during which Plaintiff and numerous other employees were interviewed, and at the conclusion of which, Mr. Anderson received a final warning and was disciplined.

These three factors demonstrate Defendant's commitment to maintaining a harassment-free work environment and preventing similar

ORDER ~ 13

future misconduct on the part of Mr. Anderson, all of which insulate Defendant from Title VII liability. *See Id.* at 1196 (citing *Ellerth*, 524 U.S. at 759). Therefore, because Plaintiff cannot demonstrate Defendant failed to take action reasonably calculated to prevent and curb Mr. Anderson's alleged misconduct or that negligence on the part of Defendant caused Plaintiff to suffer sexual harassment in the workplace, Defendant is entitled to summary judgment on Plaintiff's Title VII claim.

**2. The Severity and Pervasiveness of the Alleged Misconduct**

Because the Court has concluded Defendant's preventive, investigative, and corrective conduct entitles it to summary judgment on Plaintiff's Title VII claim, the Court need not determine whether an issue of material fact exists regarding the severity and pervasiveness of Mr. Anderson's alleged misconduct. However, upon review of the facts in this case, it does not appear, when compared to prior Ninth Circuit rulings, that Mr. Anderson's conduct was sufficiently severe or pervasive to constitute a Title VII violation. *See e.g., Swenson*, 271 F.3d at 1189 (9th Cir. 2001) (co-worker's sixteen statements to the plaintiff, including that she was "beautiful and sexy", he dreamed about her, and he wanted to kiss her and go "to a private room", did not amount to a hostile work environment); *San Mateo*, 229 F.3d at 924 , 926 (co-worker's touching of the plaintiff's stomach and then her breast through her sweater, although deemed "highly offensive", did not rise to the level of sexual harassment under Title VII).

**B. Washington Law Against Discrimination Claim**

Because the WLAD tracks federal law, the Court's ruling with regard to Plaintiff's Title VII claim applies with equal force to her WLAD

ORDER ~ 14

claim. *See Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2005) (citing *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 925 n.1 (9th Cir. 2003) (citing *Payne v. Children's Home Soc'y, Inc.*, 77 Wash. App. 507 (1995))). Consequently, for the same reasons Defendant was granted summary judgment on Plaintiff's Title VII claim, so too is Defendant granted summary judgment on Plaintiff's WLAD claim.

Accordingly, **IT IS HEREBY ORDERED**: Defendant's Motion for Summary Judgment **(Ct. Rec. 25)** is **GRANTED**. Summary judgment in awarded in favor of Defendant on all claims brought against it by Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to:

(A) Enter this Order;

(B) Enter judgment in favor of Defendant on all claims alleged by Plaintiff in this action;

(C) Strike the currently scheduled March 28, 2006, pretrial conference and April 17, 2006, trial.

(D) Provide copies of this Order and the Judgment to Plaintiff and defense counsel; and

(E) Close this file.

**DATED** this ___16th___ day of March, 2006.


                            S/ Edward F. Shea
                            EDWARD F. SHEA
                        United States District Judge

Q:\Civil\2004\0284.MSJ.wpd

ORDER ~ 15